UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DENISE K. HAYES, | ) | CASE NO. ED CV 04-00520 RZ |
| Plaintiff, | ) ) | |
| vs. | ) ) | MEMORANDUM OPINION AND ORDER |
| JO ANNE B. BARNHART, Commissioner of Social Security Administration, | ) ) ) | |
| Defendant. | ) ) | |

      This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled by the undersigned. The action arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The plaintiff and the defendant have filed their pleadings, the defendant has filed the certified transcript of record, and each party has filed a supporting memorandum. After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

///

///

I.

Plaintiff Denise Hayes filed an application for supplemental security income on January 22, 2000, alleging that she had been disabled since January 1, 1997. The Social Security Administration denied the application both initially and on reconsideration, and Plaintiff then proceeded to an administrative hearing on April 19, 2001. The Administrative Law Judge took testimony from Plaintiff, a medical expert and a vocational expert, and received exhibits into evidence, but determined that Plaintiff was not disabled. [AR 14 *et seq.*] Specifically, although the Administrative Law Judge found that Plaintiff had a disabling mental impairment, he also found that Plaintiff's drug and alcohol abuse materially contributed to that impairment; that her physical impairments were not "severe," let alone disabling; that her testimony was not fully credible; and, based on the vocational expert's testimony, that numerous jobs existed in the economy that she could perform. [*See* AR 18 (findings).] The Appeals Council denied review [AR 4-6], thereby making the decision of the Administrative Law Judge the decision of the Commissioner. 20 C.F.R. § 404.981; *Sims v. Apfel,* 530 U.S. 103, 107 (2000), 120 S. Ct. 2080, 147 L. Ed. 2d 80. Plaintiff timely sought review in this Court.

II.

Plaintiff argues that the Administrative Law Judge wrongly concluded that her physical impairments were not "severe" and that she was capable of medium work. [*See* AR 15.] Substantial evidence supports that finding.

Although Plaintiff consistently has characterized her *principal* ailments as mental, she nevertheless has amplified her complaints about her alleged physical ailments in recent months. Although she now asserts that her back pain contributes significantly to her disability, for example, she previously described her back pain as a "minor thing" that she "did not think of . . . as disabling" – and for which, as of July 2000 – six months *after* her application for benefits – she was receiving no medical care. [AR 203.]

///

Several doctors' reports support the Administrative Law Judge's medium-work finding. First, Prakashchandra Patel, M.D.'s January 2001 examination of Plaintiff found her physical condition largely normal. At that time, Plaintiff denied having pain or weakness in joints or muscles. [AR 647.] The doctor reported that Plaintiff had good strength and normal range of motion in her extremities and no neurological abnormalities. [AR 648.] Although Plaintiff reported a history of bronchitis, Dr. Patel's report shows that she had no respiratory infection, cough or asthma. [*Id.*] Second, the report of Brian Huh, M.D. also supports the Administrative Law Judge's physical-capability findings. After conducting a consultative examination of Plaintiff, Dr. Huh found no disabling impairments. He noted "mild" hepatitis due to alcohol abuse but no encephalopathy or neuropathy. Dr. Huh's assessment of her back pain was modest: "I feel that [it] is actually pretty stable at this time." Taking her hepatitis and back pain into account, Dr. Huh concluded, "I feel that she could sit, stand, and walk in an eight-hour workday with normal breaks and without needing any assistive devices," and that she was capable of medium work with no postural or manipulative restrictions. [AR 487-88.] Finally, state-agency physician Leonard H. Naiman, M.D. concurred with the medium-work assessments of the other two doctors, finding that Plaintiff's condition required only a few immaterial restrictions on her physical ability to work – and noting specifically that Plaintiff exhibited "full range of motion" and "no tenderness or spasm" in her back. [AR 492-499, 500.] Although Dr. Naiman expected that Plaintiff's back pain may "flare up" on occasion, he explained that his "medium" assessment had taken those flare-ups into account. [AR 500.]

Plaintiff also asserts that it was error for the Administrative Law Judge to "fail[] to consider" various third-party questionnaires in support of her claim. As a preliminary matter, the judge is not required to address every single item in a claimant's record, and a failure to address some items is not tantamount to a failure to consider them. More importantly, although these questionnaires may supply some evidence supporting Plaintiff's assertions of physical and mental ailments, they do not change the facts that

///

(1) substantial evidence still supports the non-disability findings, and (2) the decision is free of legal error.

## III.

Plaintiff challenges the Administrative Law Judge's central conclusion, namely that her drug and alcohol abuse have contributed materially to a disabling mental impairment, rendering her ineligible for benefits (at least based on her mental impairment) pursuant to the Contract With America Advancement Act of 1996, *codified in pertinent part at* 42 U.S.C. § 1382c(a)(3)(J). Again, substantial – indeed, overwhelming – evidence supports this finding.

Plaintiff herself traces her abuse of drugs back to her high school years, when she developed a drinking problem and used LSD, "downers" and "uppers." [AR 450 (began drinking alcohol at 14 and had drinking problem by 17), 645 (hard drugs).] Physicians examining Plaintiff during her adult years repeatedly have noted her overindulgence in alcohol, use of non-prescribed drugs, and "drug-seeking behavior" in her dealings with medical professionals. [*See, e.g.*, AR 42-43 (Plaintiff met listing 12.09, Substance Addiction Disorder), 517 (similar), 521-22 (similar); 388 (Plaintiff's mother's report that Plaintiff would "take any medication she could find," including the mother's Vicodin), 288, 291 (Plaintiff's self-reported use of mother's Vicodin); 419 (chronic alcohol abuse; ensuing 1996 "hospital course was difficult and long, due to patient's persistent request[s] for Soma"); 625 (2001 notes stating Plaintiff was "[d]rug seeking – . . . Valium, Soma, etc.").] The clinical psychologist and medical expert who testified at the administrative hearing, Michael E. Kania, Ph.D., pointed to one medical record as representative: a 1995 report by a physician reflecting that Plaintiff was initially admitted to an emergency room on suspicion of mental health problems but that, "on close questioning[,] it became apparent that this patient is an alcoholic" suited to medical care, not specifically to psychiatric care. [AR 70 (Kania's testimony), 448 (underlying 1995 report).]

Nor has Plaintiff carried her burden of showing that she would have a disabling mental impairment even absent her substance abuse. *See Ball v. Massanari*, 254 F.3d 817, 821 (9th Cir. 2001). One effort she makes at such a showing is the assertion of an underlying, non-drug-related urge to kill or otherwise harm herself. When hospitalized in March 2000, Plaintiff not only had been drinking alcohol but also had opiates and amphetamines in her system. [AR 312, 321.] According to Plaintiff, however, she had not been trying to kill or otherwise hurt herself [AR 312], a statement suggesting that simple overindulgence underlay her hospitalization. Plaintiff's test results and non-suicidal statements were similar in her prior hospitalizations in January 2000 [AR 327, 331, 344], 1999 [AR 361] and 1998 [AR 377]. It is true that the record also includes multiple entries reflecting that Plaintiff entertained thoughts of suicide, albeit while under the influence of alcohol and/or other drugs. [*See, e.g.*, AR 411.] These do not detract, however, from the substantial evidence supporting the Administrative Law Judge's contrary finding.

On the other hand, substantial evidence shows that, were Plaintiff to avoid (or, had Plaintiff avoided) abusing alcohol and other drugs, she would not have a disabling mental impairment. For example, after three months of sobriety in mid-1996, Plaintiff was able to perform full working days, and full working weeks, engaged in simple, repetitive and non-public activities. [AR 473.] Four years later, early in 2000, state agency physicians similarly concluded that, although Plaintiff was disabled when she abused alcohol and/or drugs, without such abuse she "has a treatable depressive illness" and, if she complied with prescribed treatment, "would be capable at a minimum of non-public SRT." [AR 521; *accord*, 531, 540.] And early in 2001, after Plaintiff was kept off intoxicants for ten days, she reported feeling better, sleeping normally and enjoying good appetite and energy. [AR 612.]

Plaintiff cites a report by a disability analyst, Gordon, whose notes reflect a contact with one Dr. Galletta on April 11, 2000. Dr. Galletta's statements provide no evidence, one way or the other, on the question of whether Plaintiff would be mentally disabled without the influence of drugs or alcohol. It thus supplies no basis for reversal.

IV.

Plaintiff challenges the Administrative Law Judge's finding that her testimony was less than fully credible. Again, however, substantial evidence supports that conclusion, and the judge provided sufficiently specific reasons for reaching it for the Court to determine that it was not arbitrary. *See Thomas v. Barnhart,* 278 F.3d 948, 958 (9th Cir. 2002). Plaintiff's work history, a valid factor in assessing credibility, *see Thomas,* 278 F.3d at 958-59, was poor: she had worked for only nine years of her life when, at age forty-six, she applied for benefits. [AR 168.] Plaintiff made wildly contradictory statements about her alcohol and drug abuse. For example, while she claimed at her April 2001 hearing that she last had had any alcohol at all "on New Year's Eve [2000]" [AR 36], she had been hospitalized in late January 2001 after drinking vodka for three straight days – as she admitted to Dr. Patel, as noted earlier in this Opinion – and swallowing at least 5 dozen Prozac tablets. [AR 625, 645.] Plaintiff testified "I don't know" when asked whether drugs "were a problem" for her in the past (as opposed to at the time of the April 2001 hearing). [AR 48.] Plaintiff's repeated hospitalizations for drug and alcohol abuse, discussed above, render such testimony questionable.

Finally, the credibility assessment draws support from portions of the record in which doctors treating Plaintiff have observed, on the one hand, that Plaintiff denies using drugs, but on the other hand that objective medical evidence belied those very denials. [*See, e.g.*, AR 279 (Dr. Galletta's withdrawal as Plaintiff's doctor due to her refusal to follow prescribed treatment), 363 (Galletta's 1999 notation that Plaintiff – whose urine screening at time of emergency-room admission (for sleeping-pill overdose) revealed cocaine, tricyclic antidepressants, marijuana, opiates, amphetamines and Valium – was in "severe denial" about her substance abuse); 645 (Plaintiff denies use of amphetamines, but concurrent urinalysis reveals use of amphetamines).]

These factors amply support the Administrative Law Judge's decision.

///

///

V.

Plaintiff challenges the Administrative Law Judge's reliance on testimony of the vocational expert because, Plaintiff argues, the hypothetical question posed to the expert assumed a Residual Function Capacity that was improperly optimistic. The Court disagrees. The Administrative Law Judge's Residual Function Capacity assessment derived from his antecedent findings about Plaintiff's physical abilities, her mental abilities, and her credibility, all of which findings were supported by substantial evidence and were made without legal error, as discussed above. Accordingly, the expert's testimony about various jobs that Plaintiff could perform in the area supplies substantial evidence supporting the Administrative Law Judge's non-disability ruling.

VI.

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

DATED: August __25__, 2005

/s/
RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE